## OLIVE MAY NELSON v. JAMES ANDREW NELSON et al., JOHN M. NELSON, Movent and Appellant.

### In Banc, February 11, 1924.

1. **EXECUTION: Motion to Quash: By Stranger.** The general rule is that a stranger to a judgment has no standing to move to quash an execution thereon, save in special circumstances not present in this case.

2. ——: ——: ——: **Statute.** The statute (Secs. 1675 to 1677, R. S. 1919) declaring that "if any person against whose property any execution or order of sale shall be issued apply to the judge of the court out of which the same may have been issued" in vacation for a stay until the applicant can be heard in open court, does not apply to strangers to the 'action, and does not give the execution defendant or any one else any new ground for quashing the execution. It only provides a method whereby one who has grounds for quashing an execution may postpone sale until his motion can be heard in open court, and a stranger to the action has no such grounds.

  *Held*, by WOODSON, C. J., dissenting, that a stranger to the action, on whose real estate an execution has been levied, should be permitted, and the statute was intended that such person should be permitted, to file his motion to quash the execution, and to show that it was wrongfully levied·upon property belonging to him, and thereby avoid the delay and expense of a ·suit in equity to remove the cloud that would be cast upon his title by such wrongful levy and sale.

Appeal from Jackson Circuit Court.—*Hon. O. A. Lucas,*
Judge.

AFFIRMED.

*Frank M. Lowe* for appellant.

(1)   Motion to quash is the proper remedy.  R. S.
1919, sec. 1675; State ex rel. Fabrico v. Johnson, 239 S.
W. 848.   (2)   No judgment for alimony was ever ob-
tained; therefore execution is void.  Werenecke v. Wood,
58 Mo. 356; Ex parte James, 59 Mo. 280; Pratt v. Can-
field, 67 Mo. 48.   (3)   No judgment of revivor was ever
obtained.  Goddard v. DeLaney, 181 Mo. 578.   (4)   The
circuit court acquired no jurisdiction by reason of the
mandate of this court, to make any order or enter any
judgment therein.   Howell v. Sherwood, 147 S. W. 818;
Donnelly v. Wright, 199 Mo. 304.   (5)   The real estate
being the property of appellant (movent) is not sub-
ject to execution against defendant James Andrew Nel-
son.   State ex rel. Fabrico v. Johnson, 239 S. W. 848;
State ex rel. Brubaker v. Tucker, 229 S. W. 163.

*James C. Rieger, Wm. C. Hock* and *James B. Peck*
for respondent.

(1)   The movent, not being a party to the action,
cannot maintain a motion to quash the execution.   State
ex rel. v. Clymer, 81 Mo. 122; Cope v. Snider, 99 Mo. App.
501; Hemmett v. Hatton, 189 Mo. App. 567; Brackett v.
Brackett, 53 Mo. 266.   (2)   A motion to quash, filed at
a term subsequent to the term at which the judgment
was rendered, cannot be maintained.   Brennon v. Maule,
108 Mo. App. 336.   (3)   The judgment of the circuit
court, rendered in conformity with the mandate of this
court, was proper.   Treadway v. Johnson, 39 Mo. App.
176.

JAMES T. BLAIR, J.—This case has been re-assigned. This is an appeal by John M. Nelson from an order overruling his, motion to quash a general execution issued against James Andrew Nelson in a divorce case in which Olive May Nelson was plaintiff and James Andrew Nelson was defendant. Judgment therein in 1903. Movent was not a party. In his motion he first alleges that he owns and for years has owned certain described realty, and that the sheriff has "under a pretended execution" levied thereon and advertised it for sale. He then moves to quash the execution on the grounds: (1) That plaintiff in the divorce suit "never obtained judgment for alimony in said cause;" (2) that no judgment of revivor was ever obtained, "and, therefore, no judgment was ever entered upon which a valid execution could be issued;" (3) that the (modified) judgment upon which the execution is founded is void, because there was no jurisdiction to enter it; (4) that the execution states "no sum covering the debt and is so indefinite and unintelligible as to be impossible to enforce."

The general rule (unless changed by statute) is that a stranger to a judgment has no standing to move to quash an execution thereon, save in special circumstances of whose existence in this case there is no claim. Appellant does not deny the prevalence of this rule, nor that it was formerly the rule in Missouri, as this court has several times held, but he bases his claim to a right to move to quash upon Sections 1675, 1676, 1677, Revised Statutes 1919, which he contends have changed the law on the subject. These sections in their main substance have been in force many years. Prior to 1879, Section 1675 was, in terms, applicable solely to one "against whom any execution shall be issued." It is not claimed this language could have included a stranger to the judgment. With the statute in question in this

form this court consistently applied the general rule that a stranger could not move to quash. In 1879 the sections were amended and took their present form. The only change which is relied on to sustain appellant's present contention is that which makes the statute applicable to "any person against whose property any execution . . . shall be issued." After this amendment, this court (State ex rel. Carter v. Clymer, 81 Mo. 122), without mentioning the statute, denied the right of a stranger to the judgment and execution to move to quash. The reason for the court's action in ignoring the statute in the case last cited appears from the statute itself. The statute has nothing to do with the question whether one has or has not the right to move to quash in a particular case. Sections 1675, 1676, and 1677, Revised Statutes 1919, read as follows:

"Sec. 1675. *Proceedings to set aside or quash execution.* If any person against whose property any execution or order of sale shall be issued apply to any judge of the court out of which the same may have been issued, by petition, verified by oath or affirmation, setting forth good cause why same ought to be stayed, set aside or quashed, reasonable notice of such intended application being previously given to the opposite party, his attorney of record or agent, such judge shall thereupon hear the complaint.

"Sec. 1676. *Judge to order stay of execution, when and how.* If it appear that such execution or order of sale ought to be stayed, set aside or quashed, and the petition enter into recognizance, with sufficient sureties, in such sum as shall be reasonable, to be taken and approved by such judge, conditioned that if such application be finally determined against such petitioner he will pay the debt, damages and costs, or damages and costs, to be recovered by such execution or order of sale, or render in execution all his property liable to be seized and taken or sold, by such writ or order of sale, or that the sureties will do it for him, then such judge shall make

an order for the stay of the execution or order of sale, as aforesaid; but all the property, real and personal, bound by such execution or order of sale, shall remain bound as if no such stay had been granted.''

''Sec. 1677. *Judge to certify and return the petition to the court—proceedings.* The judge shall return such petition and proceedings thereon, duly certified, to the court out of which the execution was issued, or order of sale is made returnable, and the clerk of such court shall enter the same upon his motion docket; and the court shall hear and determine the same in a summary way, according to right and justice, and may award a perpetual stay of such execution or order of sale, or may order the execution or order of sale to be enforced.''

The purpose and effect of the sections (1675, 1676, 1677) were not affected by the amendment of 1879 except to change or enlarge the class whose members might proceed under them. In 1869 (Parker v. Railroad, 44 Mo. l. c. 419) this court held that the effect of this statute was, simply, to give one within its terms ''the privilege of applying to a judge in vacation or at chambers, and procuring a preliminary or interlocutory order for the stay of an execution upon certain terms. The order made by the judge is not final; but his action and proceedings are certified to the court, for hearing, and judgment, in term time. . . . This statute enacts a means by which a party may take the initiatory steps in vacation to have the further proceedings on an execution stayed till he can be heard in court as to whether it should be set aside or quashed.''

In Heuring v. Williams, 65 Mo. l. c. 447, 448, the court says: ''The purpose of the statute was . . . to give the defendant in the execution the privilege of applying to the judge at chambers, or in vacation for an order staying the execution until he can be heard in court as to whether it should be set aside or quashed.''

It is plain from the statutory language that the con-

struction given it in the cited cases is correct. It is clear that these sections, as they stood prior to 1879, (1) did not apply to strangers to the action, and (2) did not give the execution defendant or any one else any new grounds for quashing an execution. They simply provided a means whereby the execution defendant, on stated conditions, in vacation or recess, might stay proceedings on execution until his motion could be heard in court. If he had no valid grounds for his motion, these sections gave him none. The right to have his motion *sustained,* when it came on to be heard in court, was in no way strengthened or weakened by the statutes in question. It depended, not on the statutes—for they had served their purpose in getting movent a hearing in court—but upon the general law respecting the quashing of executions, which was not affected by the statutes in any way. That is what the statutes mean (Section 1677) and that is the construction given by this court prior to 1879 in the cases cited. The amendment of 1879 merely made the sections mentioned available to "any person against whose property an execution" has been issued. It changes the description of those who are permitted to apply for a stay under Section 1675. It does not change the purpose of the sections in so far as it relates to what may be done under them. No matter who can proceed under the sections, they in no way purport to furnish him grounds for quashing an execution which he did not theretofore have under the general law. They still provide, simply and only, a method whereby one who *has* grounds for "quashing, staying or setting aside" an execution or order of sale may postpone proceedings on such execution or order of sale until his motion can be heard in open court. When the motion comes up in court, the question whether the execution should be quashed must be determined by the law in force—which law the statutes do not purport to change or affect. Under that law one in appellant's position has no grounds

upon which he can successfully move to quash, and the statutes give him none—and the statutory argument is the only one he advances in support of his claim to a right to move to quash.

It may be added that under the general law applicable to motions to quash there are those who are strangers or apparent strangers to the action who, in exceptional circumstances, may move to quash an execution. While plaintiff is not and does not claim to be in this class, yet the fact that there is such a class doubtless explains the amendment of 1879. Its purpose was to permit others who had a right under the law to be heard on motion to quash to avail themselves of the proceeding under Sections 1675, 1676, 1677.

Another thing: Appellant did not attempt to proceed under the statutes he now invokes. He simply appeared and filed in court a motion to quash a general execution issued against James Andrew Nelson in the divorce case of Olive v. James Andrew. Nor was the execution *issued* against his property.

The Brubaker Case is not in point. State ex rel. Fabrico v. Johnson, 239 S. W. 844, is an unusual case in its facts. The paragraph of the opinion relied on by appellant here is frankly stated therein to be outside the decision.

This judgment is affirmed. All concur, except *Woodson, C. J.,* and *Graves, J.,* who dissent; *Woodson, C. J.,* in separate opinion.

WOODSON, C. J. (dissenting).—I dissent from the majority opinion for the following reasons:

First: Because it holds that Section 1675, Revised Statutes 1919, does not mean what I believe it plainly and unambiguously says and means, namely: "Any person against whose property any execution or order of sale shall be issued" etc., may for good cause stated in a verified petition move the court to quash the exe-

cution. This verified petition was filed in the case, and stated, among other reasons for quashing the execution, that ''he is the owner in fee simple of the following real estate'' (then follows description of the property levied upon by the execution). ''That this movent has owned the above described property and held the title thereto for a number of years, and the records of the Recorder of Deeds of Jackson County, show the title in said movent.''

Then follows prayer for the quashing of the execution.

The undisputed facts are, and as the record shows them to be, the execution in question was issued upon a judgment rendered in the case of Olive May Nelson v. James Andrew Nelson, to which suit John M. Nelson, the movent, was not a party, and consequently the judgment was not against him nor is the execution against him, yet it was levied upon his property. Notwithstanding all of these conceded facts the motion was overruled. Notwithstanding the majority opinion, in my opinion, the movent's legal and equitable rights have been denied him by misconstruing the letter and spirit of the statute previously referred to, and which is hereinafter copied in full.

Second: My next reason for dissenting is for the reason that the majority opinion absolutely ignores the law and its spirit as announced by this court in the cases of State ex rel. Brubaker v. Tucker, 286 Mo. 468, 229 S. W. 163, and State ex rel. Fabrico v. Johnson, 239 S. W. 844, as will be readily seen by their perusal. While those cases differ in form from the case at bar, they were suits on the sheriff's bond for his refusal to levy and sell real estate as the property of the execution defendant as required by Section 2240, Revised Statutes 1909, where the record showed that the execution defendant had no interest in the property, but that it belonged to another. The court in both cases held that the plaintiff could not

recover. Had the sheriff in this case, as he did in the Brubaker and Fabrico cases, supra, declined to levy and sell the real estate in question, and had the plaintiff sued him on his bond, for such declination, then this case would have been *verbatim et literatim* with this case, without dotting an "i" or crossing a "t," with the sole exception of the names of the parties and descriptions of the real estate.

The form of the action makes no difference as to the remedy granted, if it authorizes the relief prayed and there could be no question as to the legal and equitable relief prayed, as is conclusively shown by reading the statute before copied. Now I ask the simple and just question, why make fish of the one case and fowl of the other? Is it not just such decisions as the one expressed in the majority opinion that brings this court into disrepute and contempt? And if it does not do so, should it not do so?

The facts and the law in all the cases are precisely the same. I will now state the facts of the case and my views of them a little more fully in order to more clearly show the gross injustice and palpable error that has been inflicted upon the movent in this case, and how helpless he is with all the law of the State on his side. A court of equity may be able to correct this error in a suit to remove the cloud from the title of his property, which would entail a great expense and probably much delay. Then, what assurance has he that he will meet with a more just ruling than he has at the hands of this seemingly sourly disposed court?

Counsel for appellant contends that the trial court erred in failing and refusing to declare that the execution as shown by the record was null and void and of no force or effect as to the movent, John M. Nelson. In my opinion this contention is well founded.

A similar question was presented to this court in the cases of State ex rel. Brubaker v. Tucker, 229 S. W. 163, and State ex rel. Fabrico v. Johnson, 239 S. W. 844, differing in form only.

In this case the record shows that the appellant had purchased the real estate in question from James A. Nelson, the defendant in the divorce case, some six or eight years prior to the levying of the execution, and in fact, years before his father died, from whom respondent claims her former husband inherited the land. Evidently the judgment was no lien upon the probability of James A. Nelson's possibility of inheriting the land from his father. At most, he had only a bare right to a possibility of inheriting the land from his father, but the father could have conveyed or devised the land to another, at any time before his death, and had he done either, James most certainly would not have inherited any interest therein, and the reason of that is, he had no vested interest in his father's estate while or so long as he lived, and that being true, I can see no legal objection to James's legal right to convey that possible right of inheritance to his brother in his father's estate, during the lifetime of the father. There is no pretense made that he conveyed this right of inheritance to John M. Nelson, the movent, for the purpose of defrauding his creditors, nor am I able to see or comprehend how he could do such a thing.

It is upon similar undisputed facts that the opinions of this court in the cases, supra, were based.

The right to labor is a property right, just as much so as real and personal property, and is equally protected by the State and Federal constitutions.

While this right exists, however remote may be the probability of some persons exercising it, yet they have the legal right to assign his or their unearned wages, if he or they can find a purchaser, and should such a laborer assign such wages, I do not think a creditor could garnish such wages in the hands of the assignee and deprive him of such rare values.

It seems to me the same principle of law which underlies and governs the supposed case, also governs and controls the case at bar, the right to purchase a right to an expected inheritance.

302 Mo. Sup.—29.

Counsel for respondent contends that because the appellant is not a party to the record, he has no standing in court, and cannot maintain the motion to quash. In my opinion this contention in a case like this is untenable, as shown by the cases previously cited, and which is in express terms authorized by Section 1675, Revised Statutes 1919, which reads:

"If any person against whose property any execution or order of sale shall be issued apply to any judge of the court out of which the same may have been issued, by petition, verified by oath or affirmation, setting forth good cause why same ought to be stayed, set aside or quashed, reasonable notice of such intended application being previously given to the opposite party, his attorney of record or agent, such judge shall thereupon hear the complaint."

It would seem to me to be a monstrous doctrine to hold that an execution issued on a judgment rendered in a case of John Jones, against John Smith, could be levied upon any property of the latter, and sold, and that he could not prevent a cloud thus being cast upon his title, and that his only remedy would be to resort to a court of equity for redress, which might cost large sums of money and years of litigation and delay, and thereby tie up his property indefinitely, to his additional great damage. I know of no good reason or authority for such a monstrous contention, especially when the same court, same judges, same laws, are just as capable and ample to protect all the rights and equities of all the parties in a proceeding to quash a motion issued on such a judgment, as could or would be done in an original equitable proceeding instituted in a court of equity for that purpose. Both parties must be in court, and the motion, and answer thereto, can present to the court all the rights and equities existing in the case, and the same evidence could be resorted to, to probe or disprove the issues so presented, just as well and completely as if the movent had permitted the sale to have taken place, and then resorted to a court of equity for relief. And in

either case, under the facts of the case as presented by
this record, the appellant would be entitled to the relief
prayed, and under neither would the respondent be en-
titled to have the property sold to pay her. debt, how-
ever just it may be.  The old saying that it is not just
to rob Peter to pay Paul, applies very forcibly to this
case.  There is not an intimation in the pleading or evi-
dence, as disclosed by this record, that James A. Nelson
has any legal or equitable right, title or interest in the
property in controversy which is subject to levy and
sale under the execution which it is sought to have
quashed, nor is there intimation contained herein that
there exists in fact any evidence, outside of the record,
which would tend to show that James A. Nelson has any
interest in this property.

For the reasons stated this judgment should be re-
versed and the cause remanded, with directions to the
circuit court to render a judgment quashing the execu-
tion as prayed for the motion to quash.

